## Anna A. Eshenbaugh, Plff. in Err., v. Perry Bricker.

Where a petition for discharge under the insolvent law stated that peti-
tioner was then in custody, having (in accordance with the terms of a
bail bond given by him on his arrest on a *capias ad respondendum* in an
action for damages for breach of promise of marriage) surrendered himself
to the sheriff after the recovery of a verdict against him in said action,
but it appeared from the evidence that at the time of presenting the petition
the petitioner was not in custody nor in any manner restrained of his
liberty, but had then been released on giving a new bond, *held*, that the
petitioner was not entitled to a discharge.

(Argued October 18, 1887.　Decided October 31, 1887.)

October Term, 1887, No. 177, W. D., before Gordon, Ch. J.,
Paxson, Sterrett, Green, and Williams, JJ.　Error to Com-
mon Pleas of Butler County to reverse a decree of the court be-
low discharging the defendant under the insolvent act.　Re-
versed.

The facts fully appear in the following opinion and order
of the court below, McMichael, J.:

Perry Bricker, the petitioner, was arrested on a *capias ad
respondendum*, issued at the suit of A. A. Eshenbaugh.　Her
cause of action was an alleged breach of promise of marriage.
The defendant gave to the sheriff a bond, with his father as
special bail to the action, and was by the sheriff discharged
from custody.　The case was tried and resulted in a verdict and
judgment for the plaintiff for $1,000.　On the same day on
which the judgment was entered in that case and without any
execution having been issued on the judgment, the defendant,
the present petitioner, surrendered himself to the sheriff (his
bail being present) for the purpose of discharging his special
bail from liability on the bond, and immediately on the same
day presented his petition to court, praying to be discharged
from custody, upon his giving bond to appear at the next term
of court and present his petition for the benefit of the insolvent
laws.　His bond was presented, and approved, and the court
directed the sheriff to discharge him.　To this order Miss Eshen-
baugh's counsel objected, because the defendant was not at the
time in custody under any execution process; and now, upon

final hearing, at the time fixed by the court on the presentation of the petition for the benefit of the insolvent laws the same objection, with others, is again urged.

Several objections to the final discharge of the petitioner have been filed. He has been examined under oath, and other evidence has been heard respecting his property. It does not appear that he has any property or that he has concealed or disposed of any property to defraud his creditors or with the expectation of receiving any future benefit to himself therefrom. The judgment obtained against him by Miss Eshenbaugh is not founded on actual fraud or deceit, but simply on his refusal to fulfil a contract of marriage with her. There is nothing in the case which presents sufficient reason to refuse the prayer of this petition, unless it is found in the fact that he, and his special bail to the action, surrendered him to the sheriff immediately after judgment was entered against him, and when no execution had been issued on the judgment, and he was not in custody under any execution process.

The only authority cited to support the objection to the discharge on this ground is the opinion of Judge KING in *Ex parte Mason,* 2 Ashm. (Pa.) 239. That case is certainly in point, and if the reasoning of the learned judge is correct, it should decide this case against the petitioner.

That case was made to turn (and no doubt correctly) on the point as to whether Mason could, under the circumstances, renew his special bail. In our present case, the point is made that Bricker could after his surrender to the sheriff have been released again by giving new bail to the action, and hence did not need the present proceeding to relieve him from custody, and that this is an attempt to obtain a discharge under the insolvent laws when he is not entitled to it. Is this true?

The act of June 13, 1836, was passed to regulate the commencement of actions. Its tenth section gives the form of the condition in the bond to be taken by the sheriff where a suit is commenced by *capias.* It is: "That if the defendant . . . shall be condemned in the action, at the suit of the plaintiff, he shall satisfy the condemnation money and costs, or surrender himself into the custody of the sheriff of the county, or in default thereof, that the bail will do so for him."

That form would not do for a bond taken after judgment. The defendant would then be condemned already. The action,

as an action, would be at an end. Judge KING, in his opinion cited, admits that the "form of the recognizance" would have to be altered, but cites authorities to show that it may be altered. These authorities do not apply to a statutory provision such as ours. It is very doubtful whether a bond which did not substantially follow the statute would be held valid. Then § 19 of the same act provides: "It shall be lawful for any defendant committed to prison by virtue of any *capias ad respondendum,* or surrendered by his bail as aforesaid, to enter special bail to the action, in the manner now practised and allowed, at any time before final judgment obtained against him." Not after final judgment obtained against him. I do not find anything to warrant the conclusion that under our statute a defendant can enter special bail to the action after final judgment obtained.

The eighth section of the act of June 16, 1836 (insolvent law), provides: "That nothing herein contained shall prevent a debtor arrested on a bail piece, from giving new bail, according to law, and obtaining his release thereby."

This act was approved three days after the one before cited, and the new bail then to be given "according to law" must have meant "special bail to the action . . . at any time before final judgment obtained," and not such bail after final judgment.

I am thus led to the conclusion that Perry Bricker could not have renewed his bail, or given new bail, after his surrender in this case. If that be correct, then being in jail after final judgment, he could be released in only one of three ways: First, by paying the condemnation money and costs; second, by discharge under the insolvent laws, or if that could not be done, because no ca. sa. had been issued against him, then, third, to remain in jail till the plaintiff saw fit to issue the execution, and then be discharged under the insolvent laws.

He could not get out by the first way, because he did not have the money, and it will scarcely be claimed that he was at the mercy of the plaintiff in the judgment, so much as to be obliged to await her will, and be discharged only after execution issued. Then the second way mentioned must be available, or he has no way. This argument is based on the position that the insolvent laws were intended for the relief of those who had no other means of relief; and that I believe to be the correct

view of these statutes. Then these statutes should be construed so as to meet the purpose for which they were passed.

The language in §§ 2 and 4 of the act is certainly comprehensive enough to include this case, and when the petitioner has no other means of relief, it is the duty of the court to grant him this means.

The petitioner will be discharged upon his taking the oath and making assignment of all his estate, property and effects, as required by law.

Thereupon a decree was entered discharging the petitioner on his taking the oath and making assignment, and Anna A. Eshenbaugh filed exceptions, which were not sustained. She thereupon took this writ, alleging the following specifications of error:

1. The court erred in not refusing the discharge, for the reasons given in exception 1, which reads as follows:

"That this is a civil proceeding, and in such case the discharge of the debtor under the insolvent act can only be when he is arrested, detained, or held on final process, which is not the case before the court."

2. The court erred in not refusing the discharge for the reasons given in exception 2, which reads as follows:

"That the said Bricker, if in custody at all, at the time he made his application for the benefit of the insolvent laws, had his remedy of entering new bail to the action and thus obtaining his liberty, but was not entitled to give bond to take the benefit of the insolvent laws."

3. The court erred in not refusing the discharge for the reasons given in exception 3, which reads as follows:

"That no final process had issued at the time said Bricker made said application, nor has any such process yet issued, or said Bricker been arrested by virtue thereof."

4. The court erred in not refusing the discharge for the reasons given in exception 4, which reads as follows:

"That the judgment in this case is for damages on a breach of contract of marriage, and under the act of July 12, 1882, the said P. B. Bricker is liable to arrest and imprisonment on failure to pay the same, and would not be entitled to discharge therefrom in the present application."

5. The court erred in not sustaining exception 5, which reads as follows:

"That the declaration in the case, upon which the said judgment of $1,000 was obtained, alleged fraud and deceit on part of the defendant in his contract of marriage with the plaintiff and breach thereof, to which the plea of not guilty was entered by the defendant; and the issue being thus made up, and the cause tried, the jury finding generally thereon for the plaintiff and judgment entered, such finding and judgment are final and conclusive of all the facts put at issue by the pleadings, and estop inquiry into the facts on the present application."

6. The court erred in not refusing the discharge for the reasons given in exception 6, which reads as follows:

"The time said application was made for discharge it was based upon the allegation that the defendant, P. B. Bricker, was in custody of the sheriff, by surrender, according to the terms and conditions of the bail bond given when the *capias ad respondendum* was issued, which allegation is denied, and exceptant is informed and believes that at the time said application was made said Bricker was not in custody of the sheriff, by surrender or otherwise, but was at liberty, and the said application was premature."

7. The court erred in not sustaining exception 7, and refusing the discharge, which reads as follows:

"That to entitle the said Bricker to relief under the insolvent laws, even if this were a proper case, he must have been at the time of said application in custody, such as restrained him and deprived him of his liberties."

8. The court erred in hearing the case on June 7, 1887, the day after the day fixed for hearing, without order of continuance.

*S. F. Bowser* and *K. Marshall,* for plaintiff in error.—The first question presented in the case is one of construction of the act of June 16, 1836, relating to the discharge of insolvent debtors. In the first, second, and third specifications of error it is claimed by plaintiff that the provisons of this act, so far as they relate to the discharge of the debtor, only apply where he is arrested, detained or held under final process and has no other means of obtaining his release.

Section 2 of the act (1 Purdon's Digest, p. 777) which reads as follows: "The jurisdiction of the said courts [referring to the common pleas] may be exercised as follows, and not other-

wise: 'In the case of a person arrested or detained by virtue of any process issued in any civil suit or proceeding, for the recovery of money or damages, or for the nonperformance of any decree or sentence for the payment of money, without collusion with the plaintiff, the court of common pleas of the county in which the debtor shall be arrested or detained shall have power to grant relief as aforesaid,' " etc.—seems to describe everyone entitled to give bond for the purpose of obtaining discharge, and evidently relates to final process. No other construction can be reasonably given that will satisfy the meaning of the language used.

Following this section we have the language of § 4 of the same act: "It shall be lawful for any judge of the court of common pleas aforesaid, or for the prothonotary of such court, to make an order for discharge of any debtor arrested, detained, or held by virtue of any process or bail piece as aforesaid on his giving a bond to the plaintiff in such suit or proceeding in such amount, and with such security as shall be approved by such judge or prothonotary," evidently referring by the language,—to wit, "or held by virtue of any process or bail piece aforesaid," to the process mentioned in § 2, which, we submit, means final process.

In *Ex parte* Mason, 2 Ashm. (Pa.) 242, KING, J., has said, in construing these sections: "In those steps of a cause in which the defendant could obtain his liberty during the pendency of the suit by entering bail for his appearance, such as bail to the sheriff when originally arrested, or bail above after the process had been duly returned, no necessity existed for having recourse to an insolvent bond;" which construction, if proper, brings us to the question, Could Bricker have obtained his release after his surrender, December 6, 1886, without recourse to the insolvent bond, etc. ? We submit that he could have entered new or special bail even after judgment and before final process, and thus obtained his release. 3 Chitty, General Law Practice, p. 373.

Again; the judgment is for damages on a breach of contract of marriage; and in our view of the case if final process had issued and Bricker been arrested, he would not be entitled to discharge under the insolvent act. This is one of the exceptions to the abolishment of imprisonment for debt, under § 1, of act of July 12, 1842 (1 Purdon's Digest, p. 49).

The act of July 12, 1842, abolishing imprisonment for debt, in certain cases, does not contemplate a proceeding under the insolvent act such as Bricker's.

In the case presented Bricker was at liberty, by virtue of a new bond, entered December 6, 1886, when he applied for the benefits of the act, and did not surrender himself to jail, and, under the rulings of this court, in McFadden v. Dilly, 2 Pa. 61, 62, would not be entitled to discharge.

The first Monday of June, 1887, being the 6th, was fixed for hearing. The court, however, passed the case without order, and on the following day, June 7, heard it. This we submit was error.

In an application for the benefit of the insolvent laws the debtor is the actor and must, in the language of this court, in Bartholomew v. Bartholomew, 50 Pa. 200, "set in motion the machinery of the law which must result in his discharge."

It was the duty of Bricker to have asked and obtained his discharge at the time fixed for hearing, or have laid grounds and procured an order for a continuance, and appointment of another day for final hearing. McDonough's Case, 37 Pa. 276.

*Thompson & Son* and *McJunkin & Galbreath* for defendant in error.

OPINION BY MR. JUSTICE STERRETT:

In his petition for discharge under the insolvent law defendant in error sets forth, *inter alia,* that he was arrested on a *capias ad respohdendum* issued out of the court of common pleas of Butler county, in a certain action of breach of promise to marry Anna A. Eshenbaugh, the plaintiff therein; that he thereupon gave bond in the required sum of $1,000, with John Bricker as bail, conditioned that if he shall be condemned in said action, he shall satisfy the condemnation money and costs or surrender himself into the custody of the sheriff of said county, etc.; that upon the trial of said action a verdict for $1,000 damages was rendered in favor of the plaintiff; that pursuant to the terms of said bond he "has surrendered himself into the custody of said sheriff, and that he is now in such custody of the sheriff," etc.

These and other facts averred in the petition, assuming them to be true, bring defendant in error's case within the pro-

visions of the insolvent law and entitle him to the relief therein provided; but it was denied that he was in custody at the time of presenting his petition, December 7, 1886, or that he was then in any manner restrained of his liberty. In support of that denial it was shown that on December 6, 1886, petitioner was surrendered and committed to jail by the sheriff, and on the evening of the same day, upon giving a new bond, he was discharged from custody.

On the hearing of his application for discharge, Sheriff Kramer testified as follows: "On the 6th of December, 1886, John Bricker brought Perry to me; I put him in jail. Mr. Galbreath, his attorney, afterwards came to me and gave bond, and I let him out. This was on the evening of the same day. I don't remember of ever having him in custody after this. I don't remember of Colonel Thompson saying to me that he surrendered Perry. If he did I would have put him to jail."

This uncontradicted evidence establishes the fact that at the time of presenting his petition defendant in error was not in custody nor in any manner restrained of his liberty. It follows, therefore, that one of the essential allegations of his petition was not only unsustained by proof, but was clearly shown to be untrue; and hence the exceptions of plaintiff in error to his discharge, covered by the sixth and seventh specifications, should have been sustained.

The order of June 13, 1887, discharging defendant in error, is reversed and set aside, and petition dismissed at his costs.